# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | HON. STEVEN C. MANNION |
| v. | : | Mag. No. 18-6131 |
| JOSHUA SUAREZ | : | **CRIMINAL COMPLAINT** |

I, Edgar Koby, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

In violation of Title 18, United States Code, Section 1349.

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached page and made a part hereof.

_____
Edgar Koby, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

July 24, 2018                                  at Newark, New Jersey

HONORABLE STEVEN C. MANNION          _____
UNITED STATES MAGISTRATE JUDGE       Signature of Judicial Officer

## ATTACHMENT A

From at least in or about November 2016 through in or about October 2017, in the District of New Jersey and elsewhere, defendant

## **JOSHUA SUAREZ**

knowingly and intentionally conspired with others to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1349.

## ATTACHMENT B

I, Edgar Koby, am a Special Agent with the Federal Bureau of Investigation ("FBI"). I am familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and other evidence. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where statements of others are related herein, they are related in substance and in part unless otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

## BACKGROUND

1. At various times relevant to this Complaint:

    a. Defendant JOSHUA SUAREZ ("defendant SUAREZ"), was a resident of New York and Connecticut.

    b. "Bank 1", "Bank 2", "Bank 3", and "Bank 4" were financial institutions as defined in Title 18, United States Code, Section 20.

    c. "Victim Company 1" was a publicly-traded company with its headquarters in New Jersey. Victim Company 1 sold, among other things, insurance policies and investment products. Victim Company 1 offered a web-based portal (the "Portal") through which account holders could, among other things, access their accounts, view their investment policy and/or investment product, and edit personal account information. The Portal was secured, and policyholders and investors were only able to log into the Portal by using a unique username and password. The Portal was supported by two servers, one of which is located in New Jersey. Victim Company 1 also offered a telephone customer service center (the "Center") through which account holders could, among other things, access information about their accounts and cause the Victim Company to take action (for instance mailing a check) at the account holder's request.

    d. "Victim Company 2" and "Victim Company 3" were publicly-traded companies that sold, among other things, insurance policies and investment products.

## SUMMARY OF THE CONSPIRACY

2.  Since in or about January 2017, the FBI and Department of Labor have been investigating a group of known individuals that are suspected of engaging in, among other crimes, wire fraud, mail fraud, conspiracy to commit wire and/or mail fraud, and aggravated identity theft. The investigation has revealed that members of the conspiracy are obtaining checks from business entities by falsely claiming they are account holders with the business entity. This activity includes communicating with the Portal to cause Victim Company 1 that company to issue checks or conduct wire transfers based upon the conspirators' fraudulent representations. In addition, the investigation has revealed that members of the conspiracy are obtaining and seeking to obtain money by creating fraudulent checks that appear to be legitimate checks tied to legitimate financial accounts. Once the fraudulently obtained funds have been deposited into a bank account opened by a member of the conspiracy, the individual who opened the account and/or others withdraw and attempt to withdraw money from the account.

### Co-conspirator 1

3.  In or about July 2017, an individual ("Co-conspirator 1") opened a bank account ("Bank Account 1") at a financial institution ("Bank 1"). Co-conspirator 1 opened the account in Co-conspirator 1's name and doing business under a company name ("Company 1").

4.  On or about October 6, 2017, Co-conspirator 1 entered a branch of Bank 1 and deposited a check into Bank Account 1. The check was made payable to Company 1, was in the amount of approximately $94,600, and was written on what appeared to be a legitimate check in the names of two individuals ("Victim 1" and "Victim 2") (the "Check").

5.  On or about October 10, 2017, Co-conspirator 1 entered the same Bank 1 branch and attempted to withdraw money from the Bank Account. At that time, a Bank representative contacted local law enforcement.

6.  Law enforcement responded to the Bank branch and approached Co-conspirator 1. Co-conspirator thereafter told law enforcement, in substance and in part, that: (a) he had attempted to withdraw funds from Bank Account 1; (b) he was going to get five or ten thousand dollars for his actions, including withdrawing money from Bank Account 1; (c) two individuals had driven him to the Bank 1 branch; (d) the two individuals had driven him to the Bank 1 branch on the date he deposited the Check; (e) the two individuals had given him the Check to deposit; and (f) the two individuals had not entered the branch with him but were located nearby.

7. Law enforcement searched a nearby parking lot. At that time, law enforcement encountered and arrested defendant SUAREZ and another individual.

8. Co-conspirator 1 subsequently told law enforcement, in substance and in part, the one of the two-individuals referenced above was an individual he knew as "Whizz". Co-conspirator 1 also told law enforcement that Whizz: (a) and another individual drove him to a location to get to establish Company 1 and obtain paperwork to help him open Bank Account 1; (b) gave Co-conspirator 1 money to establish Company 1; (c) and another individual gave Co-conspirator 1 money to open bank accounts, including Bank Account 1; (d) instructed him to deposit the check on or about October 6, 2017; (e) wrote out the Check; (f) obtained the deposit receipt for the Check from Co-conspirator 1; (g) told Co-conspirator 1 to withdraw money from the Bank Account on or about October 10, 2017.

9. Law enforcement showed Co-conspirator 1 a picture of defendant SUAREZ. Co-conspirator 1 stated the picture was of the person he knew as Whizz.

10. Victim 1 and Victim 2 have each stated, in substance and in part, that they: (a) do not know Co-conspirator 1 or defendant SUAREZ; and (b) did not write or authorize anyone to write the Check.

### Co-conspirator 2

11. On or about December 21, 2016, an individual ("Co-conspirator 2") opened a bank account ("Bank Account 2") with Bank 2. Co-conspirator 2 opened the account in Co-conspirator 2's name and doing business as another company ("Company 2"). Co-conspirator 2 was the sole signatory on the account.

12. On or about December 23, 2016, Co-conspirator 2 opened a bank account ("Bank Account 3") with Bank 3. Co-conspirator 2 was the sole signatory on the account.

13. On or about January 17, 2017, Co-conspirator 2 opened a bank account ("Bank Account 4") with Bank 4. Co-conspirator 2 was the sole signatory on the account.

14. On or about February 8, 2017, Victim Company 2 received a request to process a $46,000 loan against one of its customer's retirement accounts. The request sought to have Victim Company 2 deposit the $46,000

into Bank Account 4. Victim Company 2, though, determined the loan request was unauthorized and did not process the transaction.

15. On or about February 2, 2017, Victim Company 3 sent a $150,000 check, representing funds from one of its customer's account for deposit into Bank Account 4. On or about February 14, 2017, Bank 4 deposited the $150,000 check into Bank Account 4. On or about February 17, 2017, and prior to the withdrawal of any funds from Bank Account 4, Bank 4 returned the $150,000 check to Victim Company 3 following its determination that the issuance of the check was fraudulently induced.

16. Co-conspirator 2 told law enforcement that: (1) he opened Bank Accounts 2, 3, and 4 ("the Bank Accounts") at the instruction of an individual he knew as "Big Bro"; and (2) Big Bro paid Co-conspirator 2 for opening the Bank Accounts.

17. Law enforcement showed Co-conspirator 2 multiple pictures of defendant SUAREZ. Co-conspirator 2 stated the pictures were of the person he knew as Big Bro.

## Co-conspirator 3

18. On or about December 21, 2016, an individual ("Co-conspirator 3") opened a bank account with Bank 2 ("Bank Account 5"). Co-conspirator 3 opened the account in his name and doing business as a company ("Company 3"). Co-conspirator 3 was the sole signatory on the account.

19. On or about January 10, 2017, a conspirator called the Center. During the ensuing conversation, the caller, in substance and in part, provided Victim 3's name as his (the caller's) name and provided Victim 3's personal identification information. In addition, the caller requested that Victim Company 1 send a check for $120,000 from his (Victim's 3's) account to Bank 2 for deposit into Bank Account 5.

20. On or about January 10, 2017, Victim 3 contacted Victim Company 1 and stated he/she suspected that he/she was the victim of fraud. In response, Victim Company 1 stopped processing and did not send the $120,000 check to Bank 2.

21. On or about January 11, 2017, a conspirator called the Center. During the ensuing telephone conversation, the caller, in substance and in part, provided Victim 3's name as his (the caller's) name, provided Victim 3's personal identification information, stated that his Portal account was locked, and asked for help resetting the Portal password for his (Victim 3's) account.

In response, a representative of Victim Company 1 sent a password reset e-mail to an e-mail address the caller provided to the representative.

22.   On that same day, a conspirator logged onto the Portal and accessed Victim 3's account. The individual then viewed the amount available for distributions and rollovers. Later that day, a conspirator logged onto the Portal and accessed Victim 3's account. The conspirator then requested a $65,000 distribution, specifically that Victim Company 1 transfer $65,000 from Victim 3's account to Bank Account 5.

23.   On or about January 12, 2017, Victim Company 1, based on the fraudulent actions discussed above: (a) issued a $65,000 check payable to Company 3 for the benefit of Victim 3; and (b) sent the check to Bank 2 for deposit into Bank Account 5. On or about January 18, 2017, Bank 2 froze the $65,000 check and following a conversation with Victim Company 1.

24.   On or about January 4, 2017, Co-conspirator 3 opened a bank account with Bank 1 ("Bank Account 6"). Co-conspirator 3 opened the account in the name of Company 3. Co-conspirator 3 is the sole signatory on the account.

25.   On or about February 8, 2017, a conspirator sent Victim Company 3 a facsimile request to send approximately $94,925 from Victim 4's account with Victim Company 3 to Bank Account 6. On or about that same date, Victim Company 3 sent a check for approximately $94,925 to Bank 1 for deposit into Bank Account 6. Bank Account 6 reflects a deposit of $94,925 on or about February 13, 2017.

26.   Bank Account 6 further reflects a $98,000 check deposit on or about March 22, 2017. The check was issued from Victim 5's bank account at Bank 4.

27.   Co-conspirator 3 told law enforcement, in substance and in part, that a person that he knew as "Germs" instructed Co-conspirator 3 to: (a) incorporate Company 3; (b) open numerous bank accounts in the name of Company 3, including but not limited to accounts at Bank 1 and Bank 2; and (c) withdrew money from Company 3's bank accounts at Bank 1 and Bank 2.

28.   Law enforcement showed Co-conspirator 3 three pictures of defendant SUAREZ. Co-conspirator 3, in substance and in part, identified one of the pictures as the person he knows as Germs, stated a second picture of defendant SUAREZ was not the person he knows as Germs, and stated that a third picture of defendant SUAREZ might be the person he knows as Germs.

29. Victim 3 has stated, in substance and in part, that he/she: (a) did not request the issuance of the $120,000 or $65,000 check; (b) did not request that Victim Company 1 transfer those amounts from his/her account; (c) does not know Co-conspirator 3; and (d) does not know Company 3.

30. Victim 4 has stated, in substance and in part, that he/she: (a) did not request the issuance of the $94,925 check; (b) did not request that Victim Company 3 transfer $94,925 his/her account with Victim Company 3; (c) does not know Co-conspirator 3; and (d) does not know Company 3.

31. Victim 5 has stated, in substance and in part, that he/she: (a) never wrote a $98,000 check to Company 3; (b) does not know Co-conspirator 3; and (c) does not know Company 3.

<u>Co-conspirator 4</u>

32. On or about November 15, 2016, an individual ("Co-conspirator 4") opened a bank account ("Bank Account 7") with Bank 2. Co-conspirator 4 opened the account in the name of company ("Company 4"). Co-conspirator 4 is the sole signatory on the account.

33. On or about December 1, 2016, a conspirator accessed the Portal. After accessing the Portal, the conspirator created an account on the Portal in the name of Victim 6 (the "On-Line Account"). In furtherance of creating the Account, the conspirator supplied personal information concerning Victim 6.

34. Later that day, a conspirator logged into the On-Line Account. To do so, the conspirator supplied the username and password created for the On-Line Account earlier that day. The conspirator then requested that Victim Company 1 transfer $80,000 out of Victim 6's account. Specifically, the conspirator requested that the Victim Company send the $80,000 by check to Bank 2 for deposit into Bank Account 7.

35. On or about December 2, 2016, Victim Company 1, based on the fraudulent actions discussed in the prior paragraph, issued an $80,000 check to Company 4 and sent the check to the Bank 2 for deposit into Bank Account 7.

36. On or about December 9, 2016, Bank Account 7 reflects a deposit of $80,000. On or about December 12, 2016, Co-conspirator 4 withdrew $40,000 in cash from Bank Account 7.

37. Co-conspirator 4 has told law enforcement, in substance and in part, that a person he/she knew as Joshua told Co-conspirator 4 to: (a) establish Company 4; and (b) open Bank Account 7.

38. Co-conspirator 4 provided a photograph of numerous people, including the person he knew as Joshua, to law enforcement and identified the person he knew as Joshua in the photograph. Based upon my training and experience, and the investigation to date, the person Co-conspirator 4 identified as Joshua in the photograph is defendant SUAREZ.

39. Victim 6 has stated, in substance and in part, that he/she: (a) did not create the On-Line Account; (b) did not request that Victim Company 1 transfer $80,000 from Bank Account 7; (c) does not know Co-conspirator 4 or Company 4.

### Phone Records

40. On or about April 27, 2017, Co-conspirator 4 provided a telephone number that he believed was defendant SUAREZ's telephone number ("the Number"). Based upon records obtained during the investigation:

    a. The Number was in contact with a telephone number used by Co-conspirator 2 on approximately 230 occasions between December 21, 2016, and March 31, 2017.

    b. The Number was in contact with a telephone number used by Co-conspirator 3 on approximately forty occasions between March 25, 2017, and April 19, 2017.

    c. The Number was in contact with a telephone number used by Co-conspirator 4 on approximately sixty-five occasions between December 16, 2016, and February 6, 2017.

    d. Cell-site records for the Number demonstrate that:

        1. On December 21, 2016, between approximately 3:59 p.m. and 4:19 p.m., a telephone using the Telephone Number in the vicinity of the location where Co-conspirator 3 opened Bank Account 5 that same day.

        2. On January 26, 2017, at approximately 1:09 p.m., a telephone using the Telephone Number was in the vicinity of the location where Co-conspirator 3 attempted to make a withdrawal from Bank Account 5 at approximately 1:24 p.m. that same day.

3. On more than twenty additional occasions, a telephone using the Telephone Number was in the vicinity of a location where other charged conspirators made withdrawals from bank accounts in furtherance of the conspiracy.